IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ELOISE D. TROTTER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 2:17-cv-364-TMP |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OPINION**

**I.    Introduction**

The plaintiff, Eloise D. Trotter, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Ms. Trotter timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c). Accordingly, the court enters this memorandum opinion.

Ms. Trotter filed her application for benefits on November 14, 2011. She was 51 years old at the time of the Administrative Law Judge's ("ALJ's") final decision, and she has a high school education, with special education classes, and community college training as a nursing assistant. (Tr. at 25, 53-55). Her past work experience includes work as a day care worker and hospital cleaner. (Tr. at 575). Ms. Trotter claims that she became disabled on February 24, 2010, and has asserted that she is mildly mentally retarded. (Tr. at 153). Ms. Trotter received disability payments beginning in 1993, based upon her diagnosis of mental retardation (tr. at 446) and pursuant to Sullivan v. Zebley, 493 U.S. 521, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990), which required the Commissioner to consider the functionality of the recipient of childhood disability claims, rather than focusing solely on whether the child met or equaled an SSA listing. In granting benefits in 1993, the SSA found that Ms. Trotter's "I.Q. testing done at age 27 remains valid to date and represents a true estimate of her intellectual functioning." (Tr. at 447). Under the Sullivan decision, a child can receive disability benefits by showing that his impairment is as severe as one that would prevent an adult from working. 493 U.S. at 541.

In Ms. Trotter's case, the Commissioner continued disability payments to her for seventeen years, after further determining that the claimant had not shown any medical improvement. (*Id.*) Disability payments ceased in 2010, however, based upon the fact

that Ms. Trotter engaged in substantial gainful activity by working at Brookwood Hospital cleaning hospital rooms for about two years. She was fired from that job because she wasn't able to "keep up." (Tr. at 477). She attempted to find other jobs, but was unable to pass any written tests. (Tr. at 56-57).

Ms. Trotter filed the application for benefits at issue here in 2011. She was initially denied, and then sought and received a hearing. (Tr. at 33-76). The ALJ issued an unfavorable decision on September 13, 2013 (tr. at 108-19), from which Ms. Trotter appealed. The Appeals Council vacated the ALJ's decision and remanded the matter for further evaluation of the plaintiff's mental impairment. (Tr. at 125-26). A second hearing was held on July 14, 2015. (Tr. at 545-83). The ALJ issued a second unfavorable decision on August 18, 2015 (tr. at -16-27), from which Ms. Trotter appealed. The Appeals Council denied review, and this appeal followed.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is, the claimant is not disabled and the evaluation stops. *Id.* If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be found disabled without further consideration. *Id.* If she does not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider

the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Trotter has not been under a disability within the meaning of the Social Security Act from the date of her application (November 14, 2011) through the date of her decision (August 18, 2015). (Tr. at 27). She determined that Ms. Trotter has not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at 18). According to the ALJ, claimant's obesity, osteoarthritis of the right knee, borderline intellectual functioning, and dysthymic disorder are considered "severe" based on the requirements set forth in the regulations. (*Id.*) She further determined that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 19-20). More specifically, the ALJ determined that the severity of the osteoarthritis, singly or in combination with other impairments, does not meet or medically equal Listing 1.02. (*Id.*) She further determined that Ms. Trotter's

"mental impairments," considered singly and in combination with other impairments, did not meet or medically equal Listings 12.02 or 12.04. (*Id.*) The ALJ considered whether the criteria of "paragraph B" were met, but determined that the claimant's mental impairments did not cause at least two "marked" limitations, and did not result in "repeated" episodes of decompensation of extended duration. The ALJ went on to evaluate the "paragragh C" criteria, finding that the claimant had not demonstrated the "inability to function" outside of a highly supportive living arrangement for a year or more, and had not shown the evidence of, or likelihood of, repeated decompensation episodes that would satisfy the "paragraph C" requirements. (Tr. at 20). Based upon this finding, the ALJ continued to the fourth step of the analysis.

The ALJ found Ms. Trotter's allegations to be "not entirely credible" (tr. at 21), and she determined that the claimant has the residual functional capacity to perform a limited range of light work. (Tr. at 21). The ALJ found that the claimant should be subject to the following limitations: she can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; she can sit for six hours in an eight-hour work day and stand/walk for six hours in and eight-hour workday; she should never climb ladders, ropes, or scaffolds, but can occasionally balance, stoop, or crouch; she can understand, remember, and carry out simple instructions; can maintain attention

and concentration for two-hour periods; can adapt to routine and infrequent workplace changes; and can have only occasional interactions with the public. (Tr. at 21).

According to the ALJ, Ms. Trotter is unable to perform any past relevant work; she was a "younger individual age 18-49" at the date of onset, she has at least a high school education, and she is able to communicate in English. (Tr. at 25). She determined that transferability of skills is not material to the determination of disability in this case because her past work was unskilled. (*Id.*) The ALJ found that there are a significant number of jobs in the national economy that Ms. Trotter is capable of performing, such as production assembler, small products assembler, and cutlery/hardware worker. (Tr. at 26). The ALJ concluded her findings by stating that the claimant is "not disabled" under the Social Security Act. (*Id.*)

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d

1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. Discussion

Ms. Trotter asserts that the ALJ's decision should be reversed and remanded because the ALJ: (1) failed to give proper weight to her examining sources' opinions, (2) failed to properly apply the medical improvement standard, (3) failed to evaluate the

severity of the impairments in combination, and (4) did not rely on substantial evidence to support the finding that plaintiff's impairments did not meet or equal any Listing. (Doc. 10, p. 1). The Commissioner asserts that the ALJ properly evaluated the medical evidence, evaluated the claimant's impairments in combination, was not required to apply the medical improvement standard, and reached a conclusion that is supported by law. (Doc. 11). While the court does not find the plaintiff's specific arguments persuasive, the court nevertheless finds that the ALJ made an error in application of the law that requires remand.

The ALJ properly found at steps one and two that Ms. Trotter had not engaged in substantial gainful activity since her date of onset, and that she had severe impairments. The court thus begins with an examination of the ALJ's finding, reached at step three of the evaluative process, that Ms. Trotter's impairments did not meet or equal any Listing. As discussed *supra*, the ALJ examined in some detail the requirements of Listing 1.02 as it related to her knee osteoarthritis, and Listings 12.02 and 12.04 as they related to her mental impairment. However, the ALJ did not address the claimant's diagnosis of mild mental retardation, supported by IQ scores of 70 or less, except in relation to Listings 12.02 and 12.04. The ALJ failed to consider or even to mention the mental retardation criteria contained in Listing 12.05, despite the fact

that her mild mental retardation had provided a basis for the receipt of benefits from 1993 until 2010.[1]

To "meet" a listing at the third step of the analysis, the claimant must have an impairment that "satisfies all of the criteria of that listing" and meets the durational requirements. 20 C.F.R. §§ 404.1524(c)(3), 416.925(c)(3). Under Listing 12.05, the ALJ must first determine whether the claimant has "significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."[2] Listing 12.05C further provides that "[t]he required level of severity for this disorder is met when the evidence demonstrates . . . [a] valid verbal,

---

[1] In August of 2013, the SSA amended Listing 12.05 and replaced the words "mental retardation" with "intellectual disability," recognizing the pejorative and offensive connotations that had come to be associated with the impairment. However, the change in terminology did not "affect the actual medical definition of the disorder." 78 Fed. Reg. 46,4999, 46,501. Because Ms. Trotter's application predates this change, the court uses the term "mental retardation" rather than "intellectual disability to be consistent with the terminology of the Listing at the time of her application.

[2] It has been noted that "absent evidence of sudden trauma that can cause retardation" an IQ test demonstrating retardation creates "a rebuttable presumption of a fairly constant IQ throughout [] life." *Hodges v. Barnhart*, 276 F.3d 1265, 1268–69 (11th Cir. 2001) (citing *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) ("Mental retardation is not normally a condition that improves as an affected person ages. . . . Rather, a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning."); *Luckey v. U.S. Dept. of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir.1989) (holding absence of IQ test in developmental years did not preclude finding of mental retardation predating age 22 and courts should assume an IQ remained constant absent evidence indicating change in intellectual functioning).

performance or full scale IQ of 60 through 70 and a physical or other impairment imposing an additional and significant work-related limitation of function. Listing 12.05C."[3]

---

[3] Listing 12.05 was substantially re-written by the Social Security Administration, effective January 17, 2017. *See* 81 FR 66178, at 66167. The Commissioner agrees, however, that the 2017 version does not apply to the decision made with respect to the claimant's disability. That decision was made under pre-existing Listings. In effect at the time of the ALJ's decision was the following version of Listing 12.05:

*12.05 Intellectual Disability*: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.* the evidence demonstrates or supports onset of impairment before age 22.
The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
A. Mental incapacity evidenced by dependence upon others for personal needs (.e.g. toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
OR
B. A valid verbal, performance, or full scale IQ of 59 or less;
OR
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or mental impairment imposing an additional and significant work-related limitation of function;
OR
D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
 1. Marked restriction of activities of daily living; or
 2. Marked difficulties in maintaining social functioning; or
 3. Marked difficulties in maintaining concentration, persistence, or pace; or
 4. Repeated episodes of decompensation, each for extended duration.

The Eleventh Circuit Court of Appeals has held that Listing 12.05C generally is met "when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." *Monroe v. Comm'r of Soc. Sec.*, 504 F. App'x 808, 810 (2013) (quoting *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)). A claimant is conclusively presumed to be disabled if she meets or equals the level of severity of a listed impairment. *Perkins v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 870, 872 (11th Cir. 2014) (quoting *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)). The appellate court has described the step-three analysis required by Listing 12.05 as follows:

> To meet listing 12.05 ("intellectual disability"), "a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton*, 120 F.3d at 1219. These requirements are referred to as the listing's "diagnostic criteria." See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 ("Listing 12.05 contains an introductory paragraph with the diagnostic description for [intellectual disability]."). In addition to satisfying the diagnostic criteria, a claimant must meet one of the four severity requirements in paragraphs A through D of the listing. *See id.* § 12.05. Under paragraph C, the only paragraph at issue here, a claimant must show that she has both "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

> A valid IQ score of 60 to 70 satisfies the first prong of paragraph C and creates a rebuttable presumption that the claimant satisfies the diagnostic criteria for intellectual disability. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268–69 (11th Cir. 2001). At the same time, it is well established that such a presumption does not arise where a qualifying IQ score is inconsistent with other record evidence concerning her daily activities and behavior. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986)). But once the ALJ accepts an IQ score as valid and finds that the claimant's impairments meet or medically equal the other criteria of listing 12.05C, the disability determination cannot be based on the claimant's age, education, or work experience. *Id.*
>
> In sum, a claimant proves that she meets listing 12.05C by establishing the diagnostic criteria for intellectual disability, including deficits in adaptive functioning; showing onset before age 22; producing a valid, qualifying IQ score; and exhibiting the requisite deficits in work-related functioning.

*Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910–11 (11th Cir. 2015).

While the ALJ is permitted to consider evidence that is inconsistent with a finding of mental retardation, an ability to perform work for several years does not rebut mental retardation where "there is no evidence that [the job held is] beyond the reach of a mildly retarded individual." *Durham v. Apfel*, 34 F. Supp. 2d 1373, 1380 (N.D. Ga. 1998). Moreover, a finding that a claimant worked in the past, and even that a claimant could return to her past work, does not preclude an award of benefits where the claimant meets or equals a Listing. *Durham*, 34 F. Supp. 2d at 1381.

In this case, Ms. Trotter has presented evidence of IQ scores that meet the 12.05C requirement, and those scores were accepted as valid by the Commissioner in 1993. Although a more recent examining physician described Ms. Trotter's intellectual functioning as "borderline," there is no indication in the record that any treating or examining physician disputed the validity of the IQ scores.[4] Indeed, there is no indication in the record that Ms. Trotter has undergone additional IQ testing that might dispute the 1993 scores. The IQ scores are supported by Ms. Trotter's history of special education courses, and the corroborated testimony that she can barely read, cannot write a check, failed an pre-employment test at Children's Hospital, and has never been able to pass a written driver's exam, despite repeated attempts. She became employed at Brookwood Hospital as a room cleaner only because no pre-employment test was required. The IQ scores are not supported by her own testimony that she received a certificate as a nursing assistant from a community college; however, she was never able to find employment in any position requiring those skills, and has worked only in cleaning hospital rooms and sitting with children in a day-care setting.

---

[4] To the extent that the ALJ relied upon the consulting examination of Stephen D. Dobbs, Ph. D., it should be noted that Dr. Dobbs relied upon the opinions of Cynthia Neville, who was not a treating physician, and that the examination revolved around the application of Listings 12.02 and 12.04, but not 12.05C. (Tr. at 79-90). It appears that there has never been a consultative examiner tasked with determining whether the plaintiff meets or medically equals Listing 12.05C.

Given all of the evidence that was presented to the ALJ, an examination of whether Listing 12.05C applied to Ms. Trotter was necessary before the ALJ could move to the analysis of step four or step five. *See, e.g.*, *Tubbs v. Berryhill*, No. 15-00597-B, 2017 WL 1135234, at *5 (S.D. Ala. 2017). Ms. Trotter was thus entitled to a rebuttable presumption of mental retardation. At step three, if the claimant's IQ scores below 71 have not been shown to be invalid, the ALJ must next determine whether her other impairments cause "significant work-related limitations." Listing 12.05C. In this case, the ALJ has determined that Ms. Trotter has "other impairments" of obesity, osteoarthritis of the right knee, and dysthymic disorder.[5] (Tr. at 18). Such impairments are deemed to impose "additional and significant work-related limitation of function" when the effect of the impairments is "more than slight or minimal." *Cobb v. Barnhart*, 296 F. Supp. 2d 1295, 1297 (N.D. Ala. 2003) (quoting *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985) (finding that "significant" is less stringent than "severe" within the SSA regulations). In this case, the ALJ's opinion specifically stated that Ms. Trotter's "impairments constitute more than a slight abnormality" and have "more than a minimal effect on the claimant's ability to perform

---

[5] The Mayo Clinic defines dysthymia as "Persistent depressive disorder, also called dysthymia (dis-THIE-me-uh), is a continuous long-term (chronic) form of depression." https://www.mayoclinic.org/diseases-conditions/persistent-depressive-disorder/symptoms-causes/syc-20350929 (as viewed June 20, 2018).

basis activities." (Tr. at 18). Given this finding, coupled with the ALJ's awareness of Ms. Trotter's 1993 IQ scores, there is no readily apparent reason from the ALJ's decision for why she did not consider disability under Listing 12.05. Because the ALJ failed to examine whether Ms. Trotter met or equaled Listing 12.05C based on her intellectual functioning in combination with her other severe impairments, the matter is due to be remanded for consideration on that basis.

## IV.     Conclusion

Upon review of the administrative record, and considering the law applicable to these issues, the Commissioner's decision is due to be reversed, and the case is due to be remanded to the ALJ for consideration of whether the plaintiff meets or equals Listing 12.05C.

DATED the 20th day of June, 2018.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE